IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

RUBEN ANTHONY NAVARRO,

Defendant.

Case No. 3:26-cr-38-DLH

**UNITED STATES' SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE**

The United States of America, by Nicholas W. Chase, United States Attorney for the District of North Dakota, and Paul E. Jensen, Special Assistant United States Attorney, writes to recommend a sentence for Defendant in the above-captioned case. The United States has no objections or corrections to the facts set forth in the Presentence Investigation Report (PSIR). Under the terms of the plea agreement, the United States and Defendant have reserved argument on whether an additional upward adjustment under USSG § 2K2.1(b)(7)(B) is applicable in this case. *See* Doc. 02 at ¶13. Upon review of the PSIR, the undersigned agrees with the PSIR writer's assessment, and does not seek application of this upward adjustment. *See* Doc. 15 at 10. Because Defendant is also facing a revocation matter in case 1:20-cr-76 on the same day, the United States includes a recommendation for both matters herein:

- Case 1:20-cr-76: 12 months, with credit for time served, no supervision to follow.

- Case 3:26-cr-38: 41 months consecutive to case 1:20-cr-76, followed by three years supervised release on conditions set forth in the PSIR, and a $100 Special Assessment.

This recommendation incorporates a request for a slight downward variance, as described in Part c (*infra*). The remainder of this memorandum briefly reviews the sentencing factors under 18 U.S.C. § 3553(a).

a. **The Nature of the Offense, History, and Characteristics of Defendant (18 U.S.C. § 3553(a)(2))**

Defendant has pleaded guilty to possession of a firearm by a convicted felon in violation of Title 18, United States Code, Sections 922(g)(1), and 924(a)(8). *See* Doc. 1 (Information). More specifically, law enforcement responded to reports of a 14 year old child who shot himself following the negligent discharge of a firearm in November 2025. Text messages demonstrated that the child's mother was aware of a firearm, and that "Dreamer" wanted the firearm returned. Dreamer was identified as the Defendant, who was on supervised release at the time. Law enforcement conducted a search of Defendant's residence (which is where the child and his mother also resided), and located drug paraphernalia and a Sig Sauer magazine. Neither Defendant nor the firearm were present, however, Defendant was located at his place of employment and indicated that he had the firearm in his work locker. The firearm was thereafter recovered.

Defendant is correctly calculated as a Criminal History Category (CHC) V with 12 criminal history points. Defendant's scorable convictions include a 2021 conviction for Conspiracy to Possess with Intent to Distribute and Distribute Methamphetamine (which resulted in a lifetime prohibition of firearm possession and placed Defendant on supervised release beginning in August 2024); a 2024 conviction for Assault on a Person Causing Great Bodily Injury (the factual basis for which occurred in 2019); a 2024 conviction for Driving Under the Influence (the factual basis for which occurred in 2019); and a 2017 conviction for Possession of Burglary Tools, Possession of a Stolen Vehicle, Possession of a Controlled Substance, and Obstructing a Public Officer. Defendant also has a conviction for Assault with a Deadly Weapon from 1992 which did not score. The sentence in the 1992 case resulted in a five-year sentence and two parole revocations. Because the Defendant was on supervised release at the time he committed the instant offense, an additional criminal history point was added.

2

b.  **The Need for the Sentence to Reflect Seriousness, Deter, and Protect the Public (18 U.S.C. § 3553(a)(2))**

Defendant's conduct is serious. There is inherent danger in firearm possession by convicted felons. This is more acute as it relates to individuals with violent criminal convictions, such as defendant's prior assault convictions.

Beyond the general dangers associated with this type of offense, there were specific dangers and harms which flowed from this offense. Defendant also possessed apparent drug paraphernalia contemporaneous to the firearm possession. Drugs and guns poorly mix. Furthermore, the firearm possessed herein was mishandled by a juvenile, resulting in the child shooting himself in the hand. While this negligent discharge certainly was not intended by Defendant, it is indicative of Defendant's irresponsible firearm possession, and is a fact in aggravation.

Collectively, this indicates a need to deter Defendant's future criminal activity, and to reflect the seriousness of the conduct involved.

c.  **The Kinds of Sentences Available, the Sentencing Range, and Relevant Policy Statements (18 U.S.C. § 3553(a)(3-5))**

The PSIR has correctly identified the kinds of sentences available, and the Guideline Range (GLR). The GLR in this case is 46-57 months, based on an offense level of 17 and a CHC of V. Consistent with the plea agreement, the United States recommends a sentence of 41 months. This below guideline recommendation is reached by reducing the offense level by one (16), recalculating the range (41-51 months) and recommending the low end of that range. The purpose of this reduction is to reflect Defendant's willingness to enter a pre-indictment plea agreement. This reduction was contemplated in the plea agreement (Doc. 02 at ¶17), and is appropriate in this case. Therefore, the United States requests that the Court impose a downward variance in this case.

3

Amendment 836 to the United States Sentencing Guidelines eliminated upward and downward departures. As a result, policy statements related to many departures were eliminated. One relevant policy statement remains, as it relates to concurrent or consecutive sentences under USSG § 5G1.3, because Defendant will be facing a revocation hearing in case 1:20-cr-76-DLH concurrent to this matter. The United States Code is silent on the issue of concurrent or consecutive sentences in this situation, except that the court should consult the § 3553(a) factors. *See* 18 U.S.C. § 3584(c).

Under USSG § 5G1.3(d) (Policy Statement), courts are empowered to impose a sentence either concurrently or consecutively to a prior undischarged term of imprisonment "to achieve a reasonable punishment for the instant offense." This policy statement is better understood within the full context of § 5G1.3, which gives more specific guidance on when sentences should be imposed consecutively, partially concurrently, or concurrently. For example, subsection (a) requires a consecutive sentence when a defendant commits an offense while serving a term of imprisonment. Conversely, subsection (b) indicates that if a defendant is serving a sentence for another offense which is "relevant conduct" (as defined by § 1B1.3(a)(1-3)), the court shall impose a concurrent sentence and adjust for time served on the related offense which will not otherwise be credited. Finally, under subsection (c), if a state court sentence is anticipated for "relevant conduct," then the sentence imposed must be concurrent to anticipated term(s) of imprisonment. Because there is no state court sentence at issue, the only relevant guideline requirements are found under §5G1.3(a), (b), and (d), which focuses on whether the prior sentence is "relevant conduct" for the sentence to be imposed, and crafting a just sentence.

Here, the only threads which tie these cases together is the fact that Defendant faces a revocation for committing an offense while on release, and the fact that the prior conviction created

the prohibition to possess firearms. This is not "relevant conduct" under the guidelines. *See United States v. Jones*, 628 F.3d 1044, 1049 (8th Cir. 2011) ("[Defendant]'s only argument that the possession-of-a-firearm-by-a-felon charge was 'relevant conduct' to the drug-conspiracy charge is that the drug-conspiracy charge arose from conduct that triggered the revocation of probation and the imposition of a sentence on the state conviction.  This fact, however, does not make the state conviction 'relevant conduct' to the federal conviction for purposes of section 5G1.3(b)").

Under Eighth Circuit precedence, this Court appears to have discretion in imposing a concurrent or consecutive sentence. *Compare United States v. Smith*, 282 F.3d 1045 (8th Cir. 2002); *and United States v. Harris*, 324 F.3d 602, 604 (8th Cir. 2003); *with* USSG § 5G1.3 App. n.4(c). In both *Smith* and *Harris*, the court considered the then apparent mandatory language of § 5G1.3 Note Six, which required the court to impose a consecutive sentence to state court revocation proceedings that occurred because of the offense conduct.

Since that time, Note Six appears to have been replaced by Application Note 4(C). Note 4(C) indicates that when a defendant was on supervised release during the instant offense conduct, and is also revoked on the pending revocation matter, a consecutive sentence is recommended. *See* USSG § 5G1.3, App. n. 4(C). While no longer mandatory, the Court is instructed to seek a just result. The Application Note clearly contemplated these circumstances and indicates that in this case, a just result is a consecutive sentence.

Taken together, this indicates that a consecutive sentence is appropriate, and the United States respectfully requests the Court impose a consecutive sentence.

### d.   Sentences of Similarly Situated Defendants (18 U.S.C. § 3553(a)(6))

As to similarly situated defendants, the United States referenced national sentencing statistics.[1] According to the Sentencing Commission, the average sentence length for a firearm offense is 49 months, and the median sentence is 37 months. *See* Table 6; *and see* A-3 ("Sentence Imposed or Sentence Length"). The vast majority (94.4%) of firearm offenders received at least some term of imprisonment (note that this figure includes time served sentences). *See* Table 7. About half (48.7%) of firearm offenders received a within GLR sentence, 6.9% received an above GLR sentence, and 11.1% received a below GLR sentence on recommendation from the government which was not based on a 5K1.1 motion. *See* Table 10. Sentences for unlawful possession of firearms under USSG § 2K2.1 have held steady around 48 months since at least Fiscal Year 2021. *See* Figure 5.

In North Dakota, 37.1% of all offenders receive a within GLR sentence, 4.8% received an above GLR sentence, and 14.5% received a below GLR sentence on recommendation from the government (excluding 5K1.1). *See* Table 9.

Collectively, this demonstrates that the United States recommendation of 41 months is appropriate. The recommendation is between the median and mean national sentence, accounts for the relative rarity of a government recommendation below the GLR (excluding 5K1.1), and does not stray far from national sentencing averages.

---

[1] *See* Quarterly Sentencing Updates, Preliminary FY26 First Quarter Sentencing Update (published May 8, 2026, accessed June 9, 2026). https://www.ussc.gov/research/data-reports/quarter/quarterly-sentencing-updates

e.  **Conclusion**

Therefore, the United States requests the Court impose a downward variance (as described in Part c, *supra*), and recommends the Court impose a sentence as follows:

-   Case 1:20-cr-76: 12 months, with credit for time served, no supervision to follow.

-   Case 3:26-cr-38: 41 months consecutive to case 1:20-cr-76, followed by three years supervised release on conditions set forth in the PSIR, and a $100 Special Assessment.

Dated:  June 10, 2026

NICHOLAS W. CHASE
United States Attorney

*/s/ Paul E. Jensen*
PAUL E. JENSEN
Special Assistant United States Attorney
ND Bar ID 09060
P.O. Box 699
Bismarck, ND  58502-0699
(701) 222-9423
paul.jensen@usdoj.gov
Attorney for United States

7